SIMPLEX RAILWAY APPLIANCE CO. v. PRESSED STEEL CAR CO.

(Circuit Court of Appeals, Second Circuit. May 8, 1911.)

No. 254.

1. PATENTS (§ 151*)—DISCLAIMER—SUIT FOR INFRINGEMENT.

A disclaimer of an unnecessary and inadvertent statement in the specification of a patent may be entered in a suit for its infringement, where its effect is not to broaden the claim in issue, but to limit it to the actual

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

invention, strictly within the terms of the claim, and as described and shown, and to save the claim from possible ambiguity.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 151.*]

2. PATENTS (§ 328*)—VALIDITY AND INVENTION—CAR TRUCK BOLSTER.
   The Bauer patent, No. 593,410, for a car truck bolster, claim 6, was not anticipated and discloses invention; also *held* infringed.

Appeal from the Circuit Court of the United States for the Southern District of New York.

Suit in equity by the Simplex Railway Appliance Company against the Pressed Steel Car Company. Decree for complainant, and defendant appeals. Affirmed.

The decree of the Circuit Court held valid and infringed claim 6 of letters patent No. 593,410, granted November 9, 1897, to Carl E. Bauer for improvements in bolsters. The opinion of the Circuit Court is reported in 177 Fed. 426.

Clarence P. Byrnes and Alfred W. Kiddle, for appellant.

C. C. Linthicum and J. Edgar Bull, for appellee.

Before LACOMBE, COXE, and WARD, Circuit Judges.

COXE, Circuit Judge. The patentee, Carl E. Bauer, states in his specification that his object is to improve upon and remedy the defects of the form of bolster shown in patent No. 565,481, issued to W. H. Marshall, August 11, 1896. The defect in the Marshall bolster is alleged to be that, when subjected to an excessive load, it is liable to give way by splitting the web of the compression member just at the side edges of the plate tension member and by a downward bending of the web at that point. These difficulties the patentee remedies, in part, by introducing a strengthening piece at each end of the bolster. The Bauer bolster is so formed that the length of the truss is less in proportion to its depth and the ends are so arranged as to cause the lines of force to meet at a point more nearly in a line with the point of support, thus securing strength, durability and a saving in the cost of construction. In order to bring the meeting point of the lines of force nearer to the center of the bolster, the patentee bends the compression member so that it meets the tension member at a point approximately over the place of support instead of at the extreme end of the compression member, as in prior structures. At or near the meeting place the two members are riveted to prevent them from pulling apart. The specification contains a statement that, though the best results are obtained by keeping the tension member straight, if the construction be varied by bending the tension member and keeping the compression member straight it will still be within the spirit of the invention.

[1] The Circuit Court, however, permitted a disclaimer to that part of the specification, so that the patent is now limited to a bolster having a straight tension member and a compression member with its end bent at a point approximately over the place of support. That the court was entirely justified in permitting a disclaimer is, we think,

clearly established by the authorities. The effect of the disclaimer was not to broaden the claim, but to limit it to the construction, described and shown, of a straight tension member and a bent compression member. Until this disclaimer was allowed it was possible to contend for a construction of claim 6 broad enough to include a structure described in the language disclaimed, viz., a straight compression member and a bent tension member. That this was a proper case for a disclaimer and that the language disclaimed is no longer a part of the specification, are propositions which are sustained by the following authorities: Dunbar v. Meyers, 94 U. S. 187, 24 L. Ed. 34, and cases cited in Accumulator Co. v. Julien Co. (C. C.) 38 Fed. 117, 133–136.

In Carnegie Co. v. Cambria Co., 185 U. S. 403, at page 436, 22 Sup. Ct. 698, at page 711, 46 L. Ed. 968, the court say:

"Had the purpose of the disclaimer been to reform or alter the description of the invention, or convert the claim from one thing into something else, it might have been objectionable, as patents can only be,amended for mistakes of this kind by a re-issue. But the disclaimer in this case appears to have been made to obviate an ambiguity in the specification, and with no idea of obtaining the benefit of a re-issue. If the clauses had the effect of broadening the patent the disclaimer removes the objection. If they did not, the disclaimer could do no harm, and cannot be made the subject of criticism."

The sole effect of the present disclaimer is to limit the sixth claim to a structure embodying Bauer's actual invention and strictly within its terms. The statement eliminated by the disclaimer was unnecessary and was not advisedly inserted, but there is nothing of which to predicate a fraudulent intent. The statement is gone and to that extent the atmosphere is cleared.

[2] The sixth claim, which alone is involved, is as follows:

"6. In a bolster, the combination with the middle support, of a compression member, and a tension member, the said compression member being bent upward near its ends in a line with said tension member, and the tension member being straight at its ends to the end of the compression member, substantially as described."

The claim is for the combination of the following elements in a bolster: First, a middle support; second, a compression member bent upward near its ends in line with the tension member; third, a tension member being straight at its ends to the end of the compression member.

The novel feature of this combination and the one which has won for it unquestioned success in the railway world is the straight tension member connected, approximately, just over the place of support to the compression member, which is bent up to receive it. This construction permits a straight-away longitudinal pull from end to end of the tension member. The problem thus solved seems to us, with the bolster before us, to be a simple one, but the earlier patents and the numerous structures of the prior art demonstrate the proposition that no one prior to Bauer had discovered this particular construction. The necessity for it was clearly understood. Master mechanics, mechanical engineers and persons skilled in the art, in various parts of

the country, were endeavoring to remedy the defects which were well known and generally deplored, but with partial success only; the bolsters still lacked strength and durability at the ends. Bauer solved the problem; his simple changes have produced strength where formerly there was weakness and stability where there was infirmity. No better proof of this is needed than the tenacity with which the defendant has insisted upon using the patented structure. Practically all of the bolsters of the prior art, which the defendant insists have the advantages of the Bauer structure, were open to its use and yet it persists in using the patented bolster.

It would have avoided all controversy and prevented an expensive litigation if, for instance, the defendant had used the construction shown by Meatyard, Robertson and Carlton, Marshall or Lindstrom. It did not do so and was willing to risk the expense and penalties of an infringement suit to secure the right to use the Bauer bolster.

In construing the claim in controversy, we must remember that it is to be interpreted in the light of the description and drawings having regard to the difficulties to be overcome and the end to be attained. The main essential of a truck bolster is great strength, combined with simplicity of construction. It is necessary that the tension member shall have no bends or kinks, for the line of pull being straight, the tendency is to straighten out the kinks, loosen the rivets and thus destroy the usefulness of the bolster. Bauer avoids this by bending up the end of the compression member, at a point where it is intersected by the load line, so that it is parallel with the tension member from this point to its end, the rivets being inserted in this end section. When strain is applied, there is no tendency to pull the tension member down and away from the compression member. The line of pull is direct from end to end.

The Robertson and Carlton patent, No. 497,728, was introduced at a rehearing in the Circuit Court, and for this reason, perhaps, more attention has been given to it in this court than any other reference. It is for a railway car brake-beam and it requires little expert knowledge to perceive that it would be ineffectual if used as a truck bolster. But the patent does not disclose or suggest the Bauer construction. The description says:

"The strain on this improved brake-beam will be equally distributed throughout its parts. By forming the end boxes integral with the main member of the beam, the construction is greatly simplified and cheapened. Moreover, the pressure of the nuts on the ends of the truss-rod is directly against the end surfaces of the main member, which insures strength and stability."

The tension member is straight to its end, but the compression member is not bent up to receive it in the sense of the Bauer patent, and it is not riveted to the compression member. The truss-rod has round end portions with screw-threaded extremities which are inserted into boxes at the ends of the beam provided with sockets having tubular outer ends which project from the rear outer corner of the boxes and have end surfaces against which nuts on the threaded extremities of the truss-rod are screwed. In other words, the efficiency of the structure depends upon the parts being held in working order by the screw

thread and nut which were used to key up the structure when it worked loose.

Meatyard shows, in a side frame, a straight compression member and a bent-down tension member, the object being to prevent the side beams of car trucks from sagging and the consequent twisting of the axle box.

Barber and Terry show both members bent near their ends and proceeding in parallel lines from the point where they are bent to their ends.

Montz, McCarty and Henderson show a straight tension member and a bent compression member, the two being parallel from the bend to their ends.

These are the best references presented by the defendant and none of them discloses the distinguishing feature of the patent in suit. Marshall and Lindstrom came nearer than the others to solving the problem, but failed to reach the needed perfection. Bauer came into the art to remedy the defects in Marshall's bolster and he succeeded in doing so by the changes heretofore pointed out.

We do not deem it necessary to discuss the defense of noninfringement. It is argued that:

"In defendant's bolster the compression member is not a *rolled* channel nor of the same width from end to end. It is a *pressed steel shape* which is wider at the center than at the ends, and tapers gradually from its central portion toward the ends. The flanges are deeper at the ends and taper toward the middle. These features give a stronger and better truss, since the compression member being wider at the center is better adapted to resist lateral bending stresses. while the flanges being deeper at the ends. give greater resistance to shear, which tendency increases towards the ends of this member. This design could not be obtained by a *rolled* channel member. such as used in the Marshall bolster and in the Bauer form, but is easily and cheaply made in *pressed* steel."

These differences are all immaterial and do not in any way touch the essential elements of the invention as covered by the sixth claim. Judge Hazel has accurately described the defects in the Marshall bolster which Bauer remedied and the relation of Lindstrom to the invention. As we agree with him as to the respective contributions of these men to the art, we need not enter into a prolonged discussion of the evidence.

The decree is affirmed with costs.