BULLDOG ELECTRIC PRODUCTS CO. v. COLE ELECTRIC PRODUCTS CO., Inc., et al.

Civil Action No. 2726.

District Court, E. D. New York.

Dec. 20, 1944.

Morris Hirsch and Dean, Fairbank & Hirsch, all of New York City (Daniel G. Cullen and Abraham J. Levin, both of Detroit, Mich., of counsel), for plaintiff.

Thomas J. Byrne and Cooper, Kerr & Dunham, all of New York City (Thomas J. Byrne and Victor S. Beam, both of New York City, and Ralph H. Swingle, of East Pittsburgh, Pa., of counsel), for defendant Westinghouse Electric & Mfg. Co.

MOSCOWITZ, District Judge.

The defendant Westinghouse Electric and Manufacturing Company, hereinafter referred to as Westinghouse, has made a motion herein for summary judgment on its counterclaim adjudicating letters patent of the United States Patent Office, No. 2,285,770, to William H. Frank and Joseph A. Messing, owned by the plaintiff, Bulldog Electric Products Company, hereinafter referred to as Bulldog, as invalid and void.

The grounds of Westinghouse motion are:

"A. That in the proceedings in the United States Patent Office in connection with said patent, an election was made and plaintiff is estopped to assert or maintain that William H. Frank and Joseph A. Messing are the inventors of the subject matter set forth in the claims of said patent; and plaintiff is also estopped because said Frank and Messing disclaimed therein that they are the inventors of said subject matter.

"B. That there was laches in presenting claims including the vitalizing element which resulted in the allowance of the claims, for more than two years after the publication and grant of plaintiff's patent No. 2,102,295 disclosing the same structure as said patent No. 2,285,770.

"C. That the invention of said patent is not the same as that disclosed in the original application for said patent, but includes new matter not originally shown or described.

"D. That no supplemental oath was filed in the application which matured into said patent, after the embodiment in the claims thereof of the element which resulted in their allowance and which had not been embraced within the statement of invention or claims originally presented.

"E. That if (contrary to fact) it were contended or determined that the purported invention of said patent is the same as was originally disclosed or that there was no laches in presenting claims to the vitalizing element or that there was no change in the purported invention claimed as not to require a supplemental oath (contrary to grounds B, C, and D above) said patent No. 2,285,770 is directed to the same invention as plaintiff's patent No. 2,102,295 and is invalid and void for double patenting therewith."

■ While applications for summary judgment are unusual in patent cases, nevertheless they are justified under Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. Milcor Steel Co. v. George A. Fuller Co., 2 Cir., 1941, 122 F.2d 292. The purpose of the Rules is to secure the just, speedy and inexpensive determination of every action. Rule 1. While the task of the judge is perhaps made more difficult in determining a motion for summary judgment than it would be in a disposition of the patent after trial, nevertheless in a case such as this a motion for summary judgment is the correct remedy. Both plaintiff and defendant agree that an actual controversy exists between the parties and that this is a proper case for summary judgment.

A motion was heretofore made by the plaintiff for leave to take depositions to establish that the doctrine of "unclean hands" applied to the defendant Westinghouse, which is here endeavoring to have the patent adjudicated invalid. However, this Court, in an opinion which will be filed simultaneously herewith, decided that the "unclean hands" doctrine does not apply. 59 F.Supp. 587.

The present motion was argued and is submitted solely on the records of the Patent Office. The patent herein, No. 2,-285,770, evidently had a difficult time in the Patent Office. It was rejected and thereafter an appeal was taken to the Court of Customs and Patent Appeals (In re Frank et al., 29 C.C.P.A., Patents, 713, 123 F.2d 820, dated December 1, 1941), and that court in an opinion reversed the determination made by the Board of Appeals of the Patent Office and decided that the patent involved invention. Both the Board of Appeals and the Primary Examiner had decided that it did not involve invention. In his statement filed in the Patent Office on May 31, 1940, the Examiner aptly states the purposes of the invention: "The invention relates to a thermostatically controlled circuit breaker having a manually operated means by which the circuit breaker is moved to open or closed position as in an ordinary switch or circuit breaker. In addition there is provided a current traversed bi-metallic latch which in the normal manual operation, holds a releasable part but which on overload warps to free the releasable part. The breaker then moves to open position automatically."

■ Generally stated, the grounds of the defendant's motion for summary judgment are estoppel, disclaimer, laches, departure, two-year bar, no supplemental oath and double patenting. All of these grounds have been considered either by Examiners of the Patent Office, Solicitors of Patents, or by the Court of Customs and Patent Appeals. While it has up to the present time been decided that the determination of Examiners, Solicitors of Patents, and the Court of Customs and Patent Appeals is not binding upon the district court, which is called upon to adjudge the validity of the patent) nevertheless it is persuasive and where, as here, the patent had no easy course and was carefully considered by all of these, the determination made by each is entitled to respectful consideration.

The history of this case in the Patent Office is of some interest. The Patent Office and the Court of Customs and Patent Appeals did not find any evidence of estoppel. The Examiner advised rejection of the patent upon the ground of double patenting, estoppel' and also for want of invention. The Solicitor of the United States Patent Office conceded before the Court of Customs and Patent Appeals that there was no estoppel or double patenting and, in fact, confessed error in that respect in the rejection by the Board of Appeals of the Patent Office. The Solicitor of the Patent Office stated before the Court of Customs and Patent Appeals that the only issue was the Board's rejection for want of invention. The Court of Customs and Patent Appeals, by accepting the concession of the Solicitor for the Patent

Office, in effect did not pass upon the question of estoppel or double patenting.

Counsel for Bulldog argues that Westinghouse attempted to prevent the patent from issuing, and that the patent is therefore barred by the rule of res adjudicata. Minneapolis-Honeywell Regulator Co. v. Thermoco, Inc., 2 Cir., 1941, 116 F.2d 845. There is no evidence here of any attempt made by Westinghouse to prevent the patent from issuing and therefore no consideration can be given to plaintiff's contention in that respect.

■■ The application of Frank, Messing and Thomson No. 659,714 disclosed four circuit breakers and five patents resulted from such disclosure. Three of these circuit breakers (Figs. 6–13, 14–15, 16–18) resulted in three patents. Two patents arose out of one of the circuit breakers (Figs. 1–5), to wit, the patent to Thomson, No. 2,102,295, later reissued as Re. No. 21,760, and the patent in suit to Frank and Messing, No. 2,285,770.

The circuit breaker includes a number of features, some of which were invented by Thomson and others by Frank and Messing. The Thomson patent claims were limited to Thomson's features and the Frank and Messing patent claims were limited to Frank and Messing's features. While, in effect, there are two patents upon one application, each patent is directed to its own features and invention.

The basis of the patent is that portion of claim 4 to which the Court of Customs and Patent Appeals makes special reference by emphasizing the following: "the movable contact and the arm being connected directly, at a point remote from the connection of the arm to the handle, so that arm and contact move together on all breaker operations."

As has been pointed out, Serial No. 659,714 disclosed four circuit breakers which resulted in five patents. One of these comprises two different inventions—Frank and Messing contact connection arrangement and the breaker using his connection arrangement and Thomson's operating mechanism. The contact connection of Frank and Messing and that of Thomson are different. No reason has been pointed out indicating in any manner that this violates patent law.

Plaintiff contends that the claims of No. 2,285,770 do not include the lost motion connection but are directed to the operating mechanism of Thomson. The record does not seem to justify plaintiff's position in this respect.

Thomson invented the operating mechanism; Frank and Messing changed this by adding the center connection. This is all that the plaintiff claims. Obviously plaintiff could not claim Thomson's operating mechanism; it would be estopped. No such claim is made. The claim is made that Frank and Messing's center connection added to Thomson's operating mechanism. This claim seems to be founded upon fact. Figs. 1 to 5 (659,714) showing the circuit breaker was the invention of Frank and Messing. Thomson invented Figs. 6 to 13 the operating mechanism. The defense of disclaimer must fall.

■ Defendant, in its claim of laches and two year bar, states that the publication of patent No. 2,102,295 comprises a two year bar to the claimed invention of No. 2,285,770, it being the defendant's position that on May 3, 1940 a new structural feature was pointed out in the specification and inserted in all of the claims for the first time and this same structural feature was shown and described in patent No. 2,102,295. It is defendant's claim that the patent is therefore invalid as violating R.S. Section 4886, 35 U.S.C.A. § 31. Patent No. 2,102,295 is not a prior publication. Both of these patents have the same effective filing date. The application would be barred if it is a prior publication. No. 2,102,295 does not have that status.

It cannot be justly claimed that the Thomson patent relates to the center contact connection arrangement. This was the invention of Frank and Messing and not that of Thomson. The defense that new matter was injected into the application for patent No. 2,285,770 has not been established.

■ The defendant contends that claims of patent No. 2,285,770 are invalid because of the enlargement of the claims to include new matter not originally disclosed in the Frank and Messing original application and that there are three different features called for in the claims which were not disclosed in the Frank and Messing application as follows:

"1. Frank and Messing do not have the kind of operating arm called for by the claims. Claims 1, 2, 3, 5, 6, 7, 8, 9, 10, and 13 call for 'a movable contact operating arm' and 'a latch for said arm.' Claims

5, 6, 7, and 8 have an additional limitation in calling for the operating arm being 'connected to and controlling movement of the movable contact to and from the stationary contact and thus controlling the engagement of the movable contact with the stationary contact.'

"Claim 4 includes the same general limitation in specifying 'an operator arm' and 'a latch for pivotally supporting and holding said arm at one point.'

"Claims 16 and 17 call for 'a movable contact' with 'an operating arm therefor operatively connected at one point to a movable contact' and 'a latch for a second point of said arm.'

"The structure originally disclosed by Frank and Messing does not include a movable contact operating arm which is latched, as the claims call for. In the Frank and Messing structure (Exhibit 5) there are a pair of stationary contacts 11 which are engaged by a pair of moving contacts 12 carried on what the Frank and Messing specification calls a 'resilient bridging contact arm 13' or in other instances calls a 'vertically moving contact arm,' but this arm 13 cannot be the operating arm called for by the claims because there is no latch for the arm 13.

"The mid-point of the resilient arm 13 is connected to a link 15 having a lost motion slot-and-pin connection 25-26 to a link 22 which is in turn pivoted at 23 on a link 24 which is connected through the spring 27 to a link 29 pivotally mounted at 31 on a pawl 32, which is pivotally mounted on a frame at 32 and has its end 35 normally latched by the latch piece 36 carried on the end of the bimetallic latch 14.

"The link or arm 24 which is operated to move up and down about its pivot 31, between the positions shown in Figs. 2 and 4, is an operating arm but it does not comply with the limitation in the claims because there is no latch for the arm 24. The bimetallic latch 14 latches the pawl 32 rather than the arm 24. The pawl 32 cannot be considered the operating arm because it does not move on normal 'on' and 'off' operations of the breaker as is shown by Figs. 2 and 4 where the latch 14 is shown as holding the pawl 32 stationary in both 'on' and 'off' positions.

"This point was raised with respect to similar limitations appearing in the claim constituting the count of Interference No. 75,492 involving the Frank and Messing original application. The Board of Appeals, in its decision dated March 23, 1929 (Exhibit 13), said: 'We conclude that Frank et al. do not disclose the operating arm of the count.' In arguing this point before the Board of Appeals, counsel for Frank and Messing contended that the parts 24, 27, 29, and 32 could be considered together to comprise the operating arm which is latched, but the Board of Appeals denied this on page 3 of its said decision where it discussed both the Frank and Messing and the Thomson devices, which disclose identical structure, and said: 'Frank et al, contend that the several parts connected together of the Thomson invention may be considered an arm but Thomson did not so construe his invention nor could he normally use such verbiage describing the arm as is found in the count to describe his invention.'

"This holding of the Board of Appeals was completely overlooked when the Frank and Messing application for patent 2,285,-770 was considered by the Examiner and also in the Court of Customs and Patent Appeals, with the result that the Frank and Messing claims were allowed even though there was a ground of rejection in the record which was not presented to, nor overruled by, the Court of Customs and Patent Appeals.

"2. Frank and Messing do not have the spring called for by the claims. Claims 1, 2, 3, 9, 10, and 13 call for, ' * * * a *single* spring for biasing the movable contact towards the stationary contact when the parts are in circuit closed position, *and* for biasing the movable contact away from the stationary contact when the arm is released by the latch.'

"Claim 4 contains a similar limitation in calling for, ' * * * a spring biasing the arm * * * to cause and maintain contact engagement or to separate the contacts.'

"Claims 5, 6, 7, and 8 call for, ' * * * spring means for biasing the operating arm in direction to ensure * * * the movable contact engaging the stationary contact.'

"Claims 16 and 17 call for, ' * * * spring means biasing said member to establish contact * * * and being relatively positioned to provide for rotation of said arm.'

"When the Frank and Messing structure is in closed position (shown in Fig. 2, Ex-

hibit 5) the resilient spring arm 13 biases the moving contacts 12 into pressure engagement with the stationary contacts 11. The mid-point of the spring arm 13 is held down by a downwardly projecting guide part 16 and spring jaws 17 of the guide 18 which frictionally engages the guide part 16 on the resilient arm 13. The spring 27 is the spring which biases the movable contacts to separate when the latch 14 is released, but spring 27 does not bias the movable contacts toward the stationary contacts when in closed position, because the energy stored in spring 27 is absorbed in the spring jaws 17-18 and the spring 13. This is clear from the statement in the specification of the Frank and Messing patent in the second column on page 1 which describes the opening operation of the mechanism at lines 7 to 20. It is stated that when the handle 42 is moved to the right from the position shown in Fig. 2, the link 24 is raised and builds up increased compression on the coil spring 27. It is then stated that 'All this while, the link 22 and its pin 26 travels the length of the slot 25 in sliding link 15, and the link 15 and arm 13 *do not move,* the link 15 being held by spring jaws 17 frictionally engaging guide parts 16.' Since the link 15 and arm 13 do not move, there is no change in the contact pressure between contacts 11 and 12 because the spring 13 is the spring supplying contact pressure, whereas if spring 27 supplied the contact pressure, the link 15 with its projection 16 would begin to move immediately. The fact that the spring 27 does not bias the contacts together nor supply contact pressure, is also evident from the fact that there is no statement in the original disclosure that spring 27 acts as the claims now specify.

"The count of Interference No. 75,492 contained a limitation similar to those set forth above with respect to the spring 27, and the Board of Appeals, in its decision dated March 23, 1929 (Exhibit 13), held that such a limitation does not read upon the Frank and Messing disclosure, as follows: 'nor can we conclude from the Frank et al. disclosure that their spring 27 biases the movable contact into engagement with the other contact. It is our view that the energy stored in spring 27 is absorbed in spring jaws 17 and spring 13. Thus Frank et al. have two springs whereas the count calls for one spring. It is our view that the count does not distinctly claim the Frank et al. invention.' This

ground for holding the claims unpatentable was completely overlooked by the Examiner when the case was returned to him at the conclusion of the interference, and this ground was not presented to the Court of Customs and Patent Appeals. Thus there is another outstanding ground for holding the claims unpatentable in the Patent Office record, which has never been overruled on appeal.

"Claim 15 brings in new matter in calling for 'spring means between said pivot points' of the floating actuating arm. The spring 27 does not act between the pivots 31 and 33 but always has its line of action extending outside of the space between the pivots. Also the end of spring 27 always extends beyond pivot 31.

"It is thus clear that these claims do not read on the Frank and Messing disclosure and are invalid.

"3. Frank and Messing do not have the movable contact and operating arm directly connected as called for by the claims. Every one of the claims of the Frank and Messing patent calls for a movable contact operating arm with 'the movable contact and arm being connected directly, at a point remote from the connection of the arm to the handle, so that the arm and contact move together on all breaker operations.'

"The arm 24 of Frank and Messing is the operating arm called for in this clause but it is not directly connected to the movable contacts 12 so that the arm and contacts move together on all breaker operations. In fact, Frank and Messing specifically provided a lost motion at the slot 25 and pin 26 so that the arm 24 and contact 12 *do not move together* on all breaker operations. The specification specifically states that when the link 24 moves up in opening the breaker, the link 15 and arm 13 which carry the moving contacts 12 'do not move' (page 1, column 2, at lines 18 and 19). The same is true during the closing operation described at lines 51 to 54 of the same column of the patent, where it is said that the link 15 and arm 13 'do not move' during the initial downward movement of the arm 24.

"In fact, the oath made by Frank and Messing, when the three-party Frank, Messing and Thomson application was broken up, emphasizes that the lost motion connection provided by the slot 25 and pin 26 was the main feature of their invention. This lost motion connection was

provided for the very purpose of permitting the arm 24 to move without movement of the moving contact 12.

"When all of the claims of the Frank and Messing application were amended on May 3, 1940, to add the limitation quoted above, there was a complete reversal of position, since it was initially stated that the provision of the *lost motion* was Frank and Messing's invention, but the claims as amended and as finally issued call for a structure which *does not have lost motion* in specifying that the operating arm and movable contact *'move together on all breaker operations.'* It is thus clear that the limitation quoted from the claims is new matter not described in the original Frank and Messing application.

"The Frank and Messing claims are therefore invalid and void because they have enlarged the invention to include matter not originally disclosed."

The drawing of the Frank and Messing patent seems to be identical with the drawing in their application. The Patent Office was justified in holding that the patent drawing conforms with the claims of the patent and that the three claimed missing features are actually found in the patent drawing. Arm 24 is a movable contact operating arm. Without arm 24, there could be no movement of the contact. Arm 24 is so connected to latch 14 through pawl 32 that latch 14 pivotally supports and holds the arm at one point. It does not appear that the Patent Office gave any consideration to arm 24 as an operating arm for the purposes of the patent's claims. The Court of Customs and Patent Appeals refers to the horizontal link 24 as a movable contact operating arm. Defendant's claim is that Frank and Messing do not have the spring called for by the claims.

There are two operating springs in Thomson's, spring 27 in the operating mechanism and spring 122 in the contact connection. There is but one operating spring 27 in Frank and Messing's; this moves the arm 24 and the contact 13 down from the position of Fig. 4 to the position of Fig. 2 when the handle is moved from the position of Fig. 4 to the position of Fig. 2. Defendant asserts that Frank and Messing did not have the movable contact and operating arm directly connected as called for by the claims and that arm 24 "is not directly connected to the movable

contact 12 so that the arm and contacts move together on all breaker operations as called for by the quoted provision of each of the claims." It appears that when the operating arm 24 moves, before it finishes its movement the operating arm has caused the movable contact to move and whenever the contact 13 moves, the arm 24 likewise moves.

It is also claimed by the defendant that when all the claims of Frank and Messing were amended on May 3, 1940, there was a complete reversal of position, since it was initially stated that the provision of the lost motion was Frank and Messing's invention, but the claims as amended and as finally issued call for a structure which does not have lost motion in specifying that the operating arm and movable contact move together on all breaker operations. For mechanical reasons, the lost motion is provided. The purpose is to delay the movement of contact 13 until the operating arm 24 has acquired sufficient momentum. No new matter is embraced; the patent drawing is identical with the application as filed.

■ The objection that there is a lack of supplemental oath is not justifiable. The claims are supported by the original devices, as filed and the claims are supported by the device as patented. The device shown in the patent and the device shown in the application as filed are identical. No supplemental oath therefore was required.

■ The final and last claim is that the patent is void for double patenting. There is no identity of coverage between the claims of one patent and those of another. The invention claimed in the Thomson patent is the Thomson breaker, of which Thomson's operating mechanism is one subinvention. The claim of No. 2,285,770 is limited to their contact connection arrangement and not Thomson's contact connection arrangement. The patent No. 2,285,770 and Thomson's are directed to different subject matter. The difference is the contact connection arrangements. The claim of double patenting has not been established.

None of the claims made by the defendant have been substantiated. Its motion for summary judgment is denied.

Settle order in accordance with this opinion.