**BUROMIN CO. et al. v. NATIONAL ALUMI-
NATE CORPORATION.**

Civ. No. 538.

District Court, D. Delaware.

Feb. 6, 1947.

Robert H. Richards, Jr. (of Richards, Layton & Finger), of Wilmington, Del., and Walter J. Blenko and George E. Stebbins (of Stebbins, Blenko & Webb), both of Pittsburgh, Pa., for plaintiffs.

Arthur G. Connolly, of Wilmington, Del., and John T. Chadwell and Richard L. Johnston (of Snyder, Chadwell & Fagerburg), both of Chicago, Ill., for defendant.

RODNEY, District Judge.

1(a). Plaintiffs correctly argue that a declaratory judgment suit is not a suit in equity. It does not logically follow, however, that certain equitable principles are without application in such suits. A declaratory judgment suit defies any attempt to affix a label indicative of its character as either a legal or equitable proceeding. Such suits partake of the nature of both legal and equitable proceedings. While declaratory judgment proceedings clearly had their origin in matters essentially administered in a court of equity, yet it is a procedure just as available in a proper legal action as in an equitable proceeding. A declaratory judgment suit does not create any new or substantive rights. It is procedural in nature and in determining the issues presented it calls into play such principles as are peculiarly applicable. It is usually denominated as "sui generis" to indicate it is neither purely legal nor purely equitable. If a suit for declaratory judgment could not make applicable equitable principles because it is not a pure equitable action, nor make applicable legal principles because it is not a pure legal action, it is difficult to see upon what principles it could operate. The true rule, I apprehend, is that when the proceeding partakes of the nature of equity it calls into play appropriate equitable principles, and when it partakes of a suit at law it utilizes any available legal principles necessary for the proper determination of the issues. The complaint of the plaintiffs prayed for an injunction. It is quite apparent that the issues of the case partake of the nature of equity and I do not think the equitable doctrine of "unclean hands" can be entirely discarded merely because this is a suit for a declaratory judgment. Whether the doctrine can be applied in this particular case will be later considered.

The plaintiffs have cited Bulldog Electric Products Co. v. Cole Electric Products Co. et al., D.C., 59 F.Supp. 587, and mention it as having been modified in 2 Cir., 148 F.2d 792. There were two Bulldog opinions filed the same day and reported respectively in D.C., 59 F.Supp. 587 and D.C., 59 F.Supp. 588. The former dealt with a motion for depositions by a plaintiff to show "unclean hands" by a counterclaiming defendant alleging invalidity of a patent in an infringement suit. The motion was denied. The second opinion in 59 F.Supp. 588 denied a motion for summary judgment to the defendant on its counterclaim. The case in 148 F.2d 792 did not specifically review either of the above mentioned opinions, but was a modification of the conclusion reached in a different matter in D.C., 50 F.Supp. 833 granting a partial summary judgment to the defendant. The case in 59 F.Supp. 587 does recognize that in certain instances the equitable doctrine of "unclean hands" may be invoked in a suit for declaratory judgment where a party seeks to enforce his own patent. Whether the doctrine can be invoked by the holder of the patent to prevent inquiry into the validity of a patent will be later considered.

1(b). The equitable doctrine of "unclean hands" will not be refused application to a suit for a declaratory judgment merely because such suit seeks a "negative declaration" that the plaintiff is not bound

to the defendant and not an affirmative declaration against the defendant. In such suit the plaintiff obtains the relief he requires. As Borchard points out,[1] freedom or immunity from a defendant's claim is in itself a cause or right of action in the plaintiff. Of such nature have bills quia timet or to quiet title always been considered.

2. The plaintiffs contend that the allegations of the answer are not sufficient to make applicable the doctrine of "unclean hands" because the alleged improper conduct of the plaintiffs had no relation to the subject matter of the suit.

The plaintiffs contend that the subject matter of the complaint is the validity of the defendant's patent.

The defendant, in essence, contends that the subject matter of the litigation is really the extent of the plaintiffs' business as restricted by the defendant's patent and that the illegality and monopolistic nature of that business constitute such unclean hands as to bar the plaintiffs from relief.

In Keystone Driller Co. v. General Excavator Co.[2] it is said that courts "apply the maxim requiring clean hands only where some unconscionable act of one coming for relief has immediate and necessary relation to the equity that he seeks in respect of the matter in litigation." It is not apparent that the alleged improper conduct of the plaintiffs has an immediate or necessary relation to the validity or invalidity of the defendant's patent.

In 2 Pomeroy's Eq.Jur. (5th Ed.) Sec. 399 it is said of a plaintiff, "the dirt upon his hands must be his bad conduct in the transaction complained of. If he is not guilty of inequitable conduct toward the defendant in that transaction his hands are as clean as the court can require."

The relief sought by the plaintiffs is an inquiry as to the validity of the defendant's patent—an inquiry specific and concrete. The contention of the defendant relates to a general course of plaintiffs' conduct not affecting the validity of the defendant's patent in any respect. I do not think the allegations of paragraphs 10, 11 or 13 prevent the plaintiffs from seeking the relief they desire. All of the allegations of the cited paragraphs calling for inquiry as to the plaintiffs' conduct are still in the case for determination being raised in the counterclaim of the defendant.

3. The defendant contends in paragraph 12 that the plaintiffs are estopped from attacking the validity of the defendant's patent because of the action or non-action in an interference proceeding in the Patent Office. The details are included in the statement of facts hereinbefore set out.

The estoppel contended for is not that pure estoppel which has as one of its elements some reliance by a party upon a course of conduct of another as an inducement for action and the consequent inequity of a change of position. The defendant does not contend that the actions of the plaintiffs induced some action by the defendant to his detriment.

The estoppel here claimed is rather an estoppel connected with the doctrine of res judicata, it being contended that the plaintiffs cannot now impugn the validity of defendant's patent because in the interference proceeding in the Patent Office such question could have been raised by one of the plaintiffs but was not so raised. The answer to this is twofold.

1. Estoppels are of several kinds. There is that estoppel in pais which I have hereinbefore mentioned but with which we are not here concerned. There is also an estoppel in connection with the doctrine of res judicata often called estoppel by judgment. The doctrine of res judicata is primarily one of public policy and only secondarily of private benefit to the individual litigants. It has its roots in the maxim that it concerns the public that there be an end to litigation when one party has had a full and free opportunity of presenting all the facts pertinent to the controversy.

In these estoppels by judgment where a second suit or proceeding involves the same parties as the preceding suit, or their privies, and involves the same cause

---

[1] Borchard, Declaratory Judgments (2d Ed.) 19–21.

[2] 290 U.S. 240, 245, 54 S.Ct. 146, 147, 78 L.Ed. 293.

of action, the parties will be bound not only by what was actually litigated and determined, but also by those germane matters which might, with propriety, have been litigated and determined. Of this nature is Galion Iron Works & Manufacturing Co. v. J. D. Adams Mfg. Co.,[3] cited by the defendant. To have this effect, however, the later controversy must be based upon the original cause of action.[4]

In connection with the doctrine of res judicata, there is a species of estoppel to which, by the Restatement of the Law of Judgments, has been given the name of "collateral estoppel."[5] This kind of estoppel applies when the second proceeding involves the same parties as the preceding one, but which does not directly concern the same cause of action or subject matter. In this species of estoppel the doctrine of res judicata is of more limited application and the former proceeding is not conclusive as to those matters which might have been but were not litigated and determined. Of this nature is the present case. The issue in the interference proceeding in the Patent Office concerned solely the priority of invention between two parties. The defendant concedes that the validity of defendant's patent was not raised in those proceedings although, it is contended, it might have been. I am of the opinion that the plaintiffs are not estopped by the action taken in the interference proceeding from inquiring as to the validity of the defendant's patent.[6]

2. I am equally of the opinion that any question of estoppel by res judicata as affecting the private rights of the parties cannot bar a judicial inquiry as a matter of public policy into the right to maintain a patent monopoly by an inquiry as to the validity of a patent.

It has been held, "In patent cases, as in other litigation, equitable relief should be either extended or limited as the public interest may require, and that as a result the doctrine of res judicata in patent cases is limited by the public policy against monopoly."[7]

In Scott Paper Co. v. Marcalus Mfg. Co.,[8] an assignor of a patent was held not estopped from defending an infringement suit on the ground that the alleged infringing device was that of a prior art expired patent.

In Katzinger Co. v. Chicago Metallic Mfg. Co.[9] the Supreme Court held, " ' It is the public interest which is dominant in the patent system,' * * * and that the right to challenge [the validity of a patent] 'is not only a private right to the individual, but it is founded on public policy, which is promoted by his making the defense, and contravened by his refusal to make it.' "

In this state of the law[10] the plaintiffs cannot be held to be estopped by the action in the interference proceedings from now seeking to have determined the validity of the defendant's patent by which the rights of the plaintiffs are affected and a patent monopoly maintained.

As a result of the foregoing views it follows that paragraphs 10 to 13 must be stricken from the answer. Since the defendant agrees that paragraph 9 in its general terms refers solely to facts set out in the other mentioned paragraphs, it will not be ordered to be made more particular, but must fall with those paragraphs to which it refers.

---

[3] 7 Cir., 128 F.2d 411, 414.

[4] Scott, Collateral Estoppel by Judgment, 56 Har.Law.Rev. 29.

[5] Restatment—"Judgments," Sec. 68 et seq.; 56 Har.Law Rev. 1; Caterpillar Tractor Co. v. International Harvester Co., 3 Cir., 120 F.2d 82, 84, 139 A.L. R. 1.

[6] Automatic Racking Mach. Co. v. White Racker Co., C.C., 145 F. 643, 645.

[7] Addressograph-Multigraph Corp. v. Cooper, 2 Cir., 1946, 156 F.2d 483, 485.

[8] 326 U.S. 249, 66 S.Ct. 101.

[9] 67 S.Ct. 416, 420, 424.

[10] See also Haughey v. Lee, 151 U.S. 282, 285, 14 S.Ct. 331, 38 L.Ed. 162; Paramount Publix Corporation v. American Tri-Ergon Corporation, 294 U.S. 464, 477, 55 S.Ct. 449, 79 L.Ed. 997; McElrath v. Industrial Rayon Corporation, 4 Cir., 123 F.2d 627, 629.