## JEFFERSON ELECTRIC CO. v. SOLA ELECTRIC CO.

No. 7534.

Circuit Court of Appeals, Seventh Circuit.

Dec. 29, 1941.

Rehearing Denied Feb. 7, 1942.

Writ of Certiorari Granted April 6, 1942.

See 62 S.Ct. 946, 86 L.Ed. —.

J. Bernhard Thiess, Sidney Neuman, Leslie W. Fricke, Carroll J. Lord, and Robert W. Poore, all of Chicago, Ill., for appellant.

Thomas H. Sheridan, of Chicago, Ill., for appellee.

Before EVANS, SPARKS, and MAJOR, Circuit Judges.

SPARKS, Circuit Judge.

In this action appellee sued appellant to recover royalties pursuant to a contract entered into between them. The royalties related to certain electric transformers and parts manufactured and sold by appellant under the disclosures of appellee's United States patents to Daley, et al., Nos. 1,777,-256 and 1,786,422. They were issued respectively on September 30, 1930, and December 30, 1930, on applications respectively filed on July 16, 1928, and November 11, 1927.

The complaint involves the recovery of royalties on devices and their component parts which are admittedly covered by the claims of the patents, and other devices which are not admitted by appellant to be covered by any claims of those patents.

The contract, dated August 26, 1935, contains the following pertinent provisions:

(a) The licensee may at any time after one year terminate the agreement on thirty days' notice.

(b) If any claims of the patent under which the license is granted are held to be invalid or not infringed, the licensee shall be relieved from reporting and paying upon devices covered only by such claim or claims.

(c) The prices, terms and conditions of sale of transformers manufactured by the licensee under the license shall be no more favorable to the customer than those which from time to time the Jefferson Company establishes and maintains for its own sales.

(d) The plaintiff will bring and diligently prosecute such suits for infringement of the patents under which this license is granted as may reasonably be necessary for enforcing those patents and preventing nonlicensed competition.

The appeal now before us is from a ruling of the District Court striking a counterclaim filed by the defendant. This counterclaim alleged invalidity of the patents under which appellant held the license. We have heretofore overruled a petition filed by appellee to dismiss the appeal on the ground that the order was not an appealable one, but was merely an interlocutory one which neither granted, denied nor dissolved an injunction. Jefferson Electric Co. v. Sola Electric Co., 7 Cir., 122 F.2d 124.

As grounds for the declaratory judgment prayed in its counterclaim, appellant alleged that appellee, in March 1936, sued the France Manufacturing Company in Ohio, for infringement of patent No. 1,777,256, relying originally upon claims 1 to 5 inclusive, and 7, 8, and 12 to 21 inclusive. Subsequently, appellee announced in that case that it would rely only upon claims 8, 14 and 19 which were thereupon held valid and infringed. This ruling of the District Court was affirmed by the Circuit Court of Appeals for the Sixth Circuit. France Mfg. Co. v. Jefferson Electric Co., 106 F.2d 605. The counterclaim further alleged that, by withdrawing the claims above referred to from contest in the France case, appellee sought to escape a formal adjudication of those claims because of the effect of a finding of invalidity of such other claims upon the license agreement; that the intent of the parties to and the spirit of the license agreement, particularly the provisions of paragraph 11(b) thereof (to which we have referred above as (d) ), was and is that in any suit for infringement of the patent, the licensor would put and keep in issue such claims as were infringed; that if any claims were held invalid, the appellant herein would be relieved from including in its reports thereafter, transformers shipped and acts performed, which were covered only by such invalid claims; that appellee, without any justification, was attempting to collect royalties and to exercise price control unlawfully over the appellant on transformers which, if covered at all, were covered only by claims of the letters patent which were charged to be infringed and were subsequently withdrawn from issue in the prior suit, and which were in fact void. Appellant further averred that equity, good conscience and fair dealing required that all such other claims of the patent so charged to be infringed and withdrawn from issue in the prior suit, be formally adjudicated herein to be infringed and of no further force and effect.

Appellant in stating its position, asserts that it does not seek to avoid its ob-

ligations as to units admittedly covered by the license. It insists that its own modified units are covered, if at all, only by invalid claims of the licensor's patent. Hence, it urges that it should be permitted to show such invalidity, because public policy forbids the unjust imposition of charges by a patent owner upon devices not embraced by his patent, and requires curtailment of his attempt to fix prices thereon. The answer to this objection is that the public by its Government has granted a patent to appellee upon everything which it licensed to appellant, and that grant carries with it a presumption of validity until it is overcome by the judgment of a federal court. This record discloses no attempt on the part of appellee to fix prices upon anything not covered by the patent. Hence, the situation is not amenable to anti-trust laws in the interest of public policy. Generally speaking, appellant as licensee is estopped to deny the validity of the patent under which he is licensed. This is elemental, and the citation of authorities in its support is unnecessary. This counterclaim is really an effort to override that principle, and it is sufficient for us to say that we cannot approve the effort.

Public policy from the beginning of our Government has favored the issuance of patents, and Congress and the courts, consistent with that purpose, have protected them by legislation and judicial interpretation. It seems to us that the ends have justified the means. Any departure from the well-settled principles should be addressed to Congress and not the courts.

■ The license before us was not entered into without thought on the part of appellant. It fully protected the licensee against any claims of the patents which might be declared invalid by judicial procedure, and it provided that the licensor should protect the licensee by instituting infringement suits against all infringers, which might be reasonably necessary for enforcing the patents and preventing nonlicensed competition. It further provided that appellant might terminate its license and its obligation thereunder upon thirty days' notice. There is no provision in the license which requires the licensor to institute any action for the purpose of declaring any claim invalid. It was clearly appellant's intention to be protected by every claim in the patent. So when appellee instituted action in the Sixth Circuit against the France Manufacturing Company, its duty was to prosecute that case for the purpose of enforcing the patents and preventing competition of France with appellant, who was not a party to the action. This it did by establishing the validity of three claims just as effectively as if it had prosecuted every claim. Appellee had a right to choose the claims for contest in that case in order to carry out its duty to appellant under the license.

Appellant, however, seems to have changed its position since it entered into the contract. It is now anxious for someone to bring a suit in order to relieve appellant from its burdens under the license and still leave it free to benefit by it. It seems to be assured of the invalidity of the other claims and of the value of its own modified unit, yet it is not willing to forfeit its rights under the license in order to put itself in a position where it may contest the validity of the patent claims. A court of equity cannot entertain such requests.

■■ Appellant further contends that in withdrawing certain claims from the suit in the France case, appellee furnished ample ground for permitting appellant to litigate the question of invalidity and is thereby estopped to claim an estoppel against appellant. There is no merit in this contention. Appellee had a right to withdraw any claim or claims from litigation in that case which it thought would enforce the patents and prevent nonlicensed competition with appellant. The result of that litigation protected appellant in its rights under the license, and that is all appellee promised to do. The withdrawal of the claims was not an admission of invalidity and it furnished no basis for the escape of appellant from its estoppel to deny the validity which is still presumed to exist by the issuance of the patent.

Appellant further contends that the decision in the France case published to the world the invalidity of the claims which were withdrawn, and constitutes an eviction of appellant from any claim of monopoly thereafter. It further argues that that court, inferentially at least, declared those withdrawn claims invalid. There is no language in that decision which bears out this statement. True, the appellant in that case made a vigorous effort to have that court pass upon the validity of the claims withdrawn, but it expressly declined to do so.

The present case now stands in such form that the issue can be tried as to whether appellant's modified units come within

the claims of the patents under which the license was granted. If they do not appellant will receive all the relief that it is entitled to. If the modified unit does fall within the claims of the licensed patent, then appellant will be bound by it until such time as it desires to waive its license, or until a court of competent jurisdiction, at the behest of a proper litigant, holds the offending claims invalid.

The District Court did not err in striking the counterclaim from the record. The order is

Affirmed.